Court, Courtney McDermott for Petitioners. Your Honor, on November 10, 1994, Petitioners entered the United States as B-2 visitors with an authorized stay of six months. Two weeks later, they filed an application for political asylum. When issuing her decision denying their application of asylum, Immigration Judge Yam found Petitioners not credible and the alternative found that Petitioners failed to submit sufficient evidence to show that they were ever victims of past persecution. Judge Yam devoted the majority of her opinion to finding the Petitioners not credible, a finding that the Board of Immigration Appeals reversed. Alternatively, in a two-paragraph ruling, Judge Yam found Petitioners did not demonstrate past persecution. This ruling was erroneous, and I submit that the Court should reverse the judge's decision. Because the B.I. overruled the judge's credibility, finding this Court must review Judge Yam's factual findings under the Substantial Evidence Standard, C. Stoyanov and Garovines. Do I understand your position then correctly that we don't need to worry about the footnote? We can just go straight to examine whether Judge Yam's alternative conclusion was correct or erroneous. I think that the Board violated this, the AWO, or Affirmative Without Opinion, regulation. But as to showing prejudice, that's a little difficult. I think Why do you think you have a requirement of showing prejudice if the Board violated its own streamlining regulations? I was thinking of Like a due process error? Yeah. Well, that is inapplicable here. I think the Board absolutely violated the regulation by making a footnote. And what they should have done was say the reasons for which they had affirmed her opinion, because her opinion is quite scant in reasons for denying the asylum if you take away the multitude of pages on credibility. And therefore, the Board should have clarified why she was, why they were denying. I think I hear you saying, though, there's no harm if we then just go look past the BIA and go look directly at what Judge Yam did. Is that pretty much what you're saying? I think the Board should have followed its own regulations. But I mean, if we send it back and say, okay, strike the footnote, and then they still affirm, it comes back, we're in the same boat we're in now, where we would look back to see what Judge Yam did. That's correct. But maybe we'd have a better idea of what the Board was affirming for. And, you know, in footnote 10, in Falcone-Carriche, it talks about, well, what if they're affirming for a reason that isn't the same reason as this Court would affirm? And, you know, like, if you're overruling a district court decision for the same, for a different reason, this Court has to tell the lower court why it's reversing. And I think that the BIA should have told them, too. But we know exactly why. Indeed, the footnote, though it seems to violate the regulation, does say two reasons given, don't count this one, count that one. So we wouldn't have any problem with that if it came back simply saying the same thing they say here with regard to the second alternative ground. That's correct. How about the merits of it? You know, we see asylum cases all the time, or you see some terrible things. This case, by comparison, makes you wonder whether the bad stuff that happened really rises to that high level of persecution. He's got a traffic accident that, you know, he's rear-ended, and... Well, Your Honor, I think that the judge really mischaracterized that traffic accident. I mean, she talked about the petitioner colliding with the Army truck, which was physically impossible since he, you know, was stopped, and the truck collided with him. But even if her characterization weren't grossly inaccurate, the fact is that the Army got out of their truck, several soldiers yelled at him, kicked his car, kicked him in their heavy boots. It's quite menacing. It's a... It sounds like road rage. I mean, it sounds like Phoenix, you know. I've lived in Phoenix. But the difference is that if you were yelling at me, Your Honor, you wouldn't be the Army, a man in heavy Army boots with guns yelling at me and kicking me. Particularly in the aggregate, Judge Ham analyzed each one of these incidents as if it were just one single incident. But if you look at, you know, the Army breaking into their house and assaulting, beating the petitioner quite severely, sexually assaulting his wife... Okay, that happened in 87, right? Correct. And then he left... For two years. What significance do we attach to the fact that he went back? His wife told him that things were getting better, but clearly, in fact, they were not. So the fact that he returned, I don't think diminishes his fear if he's been told, well, things are getting better, and then they're wrong. I think the court can understand or impute that, you know, he loved his family very much and it was very, very difficult to live in exile. And he came back because he thought that things were getting better. And if that was true, it would be worth returning. And in fact, I think it substantiates his assent that they didn't come here for any reason other than they could no longer safely live in their home country. That wasn't their first choice. He tried to come back and it didn't work because it was too dangerous. Because as in cases such as Sarita v. INS and... Oh, Singh v. INS, I know that doesn't narrow it very much, but 94 F. 3rd, 1353. His case is quite similar to those where in the aggregate, if you look at the numerous burglaries, the 1987 incident where they beat him up, they sexually assaulted his wife, they stole from him, he went to the police the next day to report it. And instead, those same three army soldiers were there. They beat him again. They pointed a gun at him and told him, one shot and you're dead. Banged his head against the wall and left him in this cell overnight. Then they dragged him out of the temple in 1991 after he returned and told him, you know, Indians should go home. Only Christians are allowed in Fiji. You should go back to India or become a Christian. Then there was this incident in 1994 where they threatened him and assaulted him. And in light of all of these things in the aggregate compounded over the years, it was no longer safe for them to remain in Fiji. I'd like to also note one other thing and that was Judge Yam said, oh, well, the petitioner's family still lives in Fiji and they're fine. They're just afraid of losing their lease. That's no big deal. But in fact, Your Honor, that's a very big deal because the record reflects that ethnic Fijians own 83% of the land in Fiji and the government owns 8% and only the remaining 9% is freehold land or alienable land. And the land owned by ethnic Fijians cannot be alienated. So Indo-Fijians, who are the majority of the cultivators of the land, such as petitioner's family, must lease the land for 10-year periods. And as this Court noted in its decision in Chandvi INS 22F1066, in addition to physical and verbal abuse as well as being robbed repeatedly, being evicted from one's land is tantamount to losing one's home and all of one's possessions because effectively only ethnic Fijians can own land in Fiji. And therefore, while the petitioner's family was not able, was concerned about losing his lease, this is actually more evidence of persecution against Indo-Fijians in Fiji. Did you want to reserve some time for rebuttal? Yes, Your Honor. Thank you, Ms. McDermott. May it please the Court, Donald Kuvion for Respondent. Your Honors, the petitioner offers, in support of his claim, three incidents, only one of which I want to get to the particular Yes. I'm sorry. Go ahead, Judge Kovtun. Could we ask you about the procedural or the concern that we have with regard to the BIA's decision, which does appear to conflict with the regulation in doing something more than say affirmed without opinion? What should we do about that? Nothing. I don't think it is a violation. And if it is, it gave the petitioner something in the process. It didn't take anything away. The counsel, the thing that troubles me is if we had a situation where we were reversing a district court's credibility. Can you hear me? Barely. Okay. If we had a situation where we were reversing a district court's credibility finding, we would probably remand to the district court to do further proceedings consistent with this. And the question that this raises is maybe here, and I'm not sure because I'm not sure the credibility finding didn't take the rest of the analysis by the IJ because once the IJ has decided he's not credible and then he goes on to the merits, it's easier to discount things, to not take a mistruth, to find the evidence less weighty or less sufficient. So if the BIA can't affirm, then either it seems to me under the regulations it needs to issue an order modifying the IJ's decision because after all the IJ's decision is what we are supposed to review or reverse the credibility finding and send it back to the IJ saying take the testimony as true. Now do your past persecution analysis. The fact finder in this case specifically made an alternative finding. And that is what is under review. We're talking about the BIA and its procedure. And what I'm saying is that in this case maybe everyone who suggested that it didn't hurt petitioner, it's okay. But we have to look at this from a broader perspective and see how this role is going to apply in other cases. Can we just ignore the whole point of the summary affirmance procedure which is summary affirmance, not in part reversal, in part affirmance. But is this not summary affirmance of the alternative finding? But what I'm saying is that if the BIA doesn't follow its own procedure, then how do we know really what if the alternative finding is not tainted by the other part that was reversed, which is usually, I mean, as a practical matter, you have to concede that the IJs, even though they make an express alternative finding, they're influenced by their finding that they don't believe the petitioner. The ‑‑ I guess we're just talking, I suppose, around each other, aren't we? And fortunately ‑‑ Oh, no, you're not answering my question. Shouldn't we hold the BIA to comply with its own rules that it promulgated? As I said, I don't concede that it is a violation of the regulation. Okay. Suppose for sake of argument, I think it's a violation. All right. Okay. So let's assume for sake of argument it's a violation of its own rules. Then what? And we're remanded to strike the footnote? Well, no, what I ‑‑ I mean, to me, extrapolating from normal appellate-type procedures, the BIA should have reversed the decision and remanded to the IJ to redetermine the past persecution issue, taking the testimony as true, because that's what the BIA is saying now. This testimony is true. I think that's what it's saying. That's another problem with it. It's not following its procedure. I mean, if that's what the court wants to do ‑‑ I'm not saying that anybody agrees with me. I'm asking you for your thoughts on some of these certain things. Well, I don't see that there was ‑‑ they're tweaking it in a way, you might say, to ‑‑ I mean, if you want to call that a violation of the regulation, but they're tweaking it in a way to say this is what we're summarily affirming. Now, if that is a violation of the regulation, does it matter in this instance? As I understand, Your Honor, Your Honor is saying, well, it could perhaps have tainted the alternative finding. But the alternative finding stands on its own. Well, we don't know that, do we? Because it wasn't remanded to the IJ to take the testimony as true. But what is under review is the alternative finding, which has to stand on its own legs without any reference to what precedes it, which was not affirmed. And the fact finder offers in the alternative ‑‑ this is, you know, not unusual at all for fact finders to make alternative findings. Fortunately, this one did, and denominated it as such, and offered several reasons why, assuming, he said, assuming credible, that he found the evidence not persuasive. And that is before the Court. That's what's under review. And I guess I would say, does ‑‑ is there any indication, then, that the previous finding, which was the credibility finding, is not ‑‑ no. Is there any indication that the credibility finding influences the alternative finding? There are a number of times in the alternative finding that IJ says, even assuming the testimony is true, which I don't believe that it's true, I mean, he keeps repeating that his disbelief in the testimony is true. And I think a reasonable inference from that could be that that was taming his decision. He makes that statement over and over in almost every paragraph. Well, that's ‑‑ I would say that's just the way that he articulates it, that that's the way he speaks. And could it have been more artful? Yes, of course. But frankly or candidly, if that's all there is to indicate that it in some fashion taints it ‑‑ Tell me why it's not tainted. Tell you why it's not? Because he gives various reasons in the alternative why the principle incident in 87 did not rise to the level of persecution and whatever it was, it was not on account of a cognizable reason for asylum. And then he discounts the other two incidents as episodic and insignificant in a sense. Something that shows absolutely no interest in this man by the government or any other group. These are examples of communal conflict that's ongoing and will never stop. The situation in Fiji has normalized. In fact, it got back to normal or started getting back to normal within just a few years of the coup. And at no point at any time, especially in 87, was he ‑‑ was any mention made of his politics or ethnicity? These were just in the context of a coup more or less, errant common soldiers intent on looting and enriching themselves under the circumstances. And that's what he based it on. You've got all of six seconds left. Did you want to ‑‑ Thank you, Your Honor. Thank you very much. Ms. McDermott, you get the last word today. Your Honor, I agree that the ‑‑ I.J.'s credibility finding definitely influenced her recitation of the facts. And she ‑‑ for one thing, she only gives about a page and a half to the facts. And in her alternative credibility ‑‑ or her alternative finding, and that's similar to this court's decision in Stoyanov v. INS 172 F. 731 on page 735 where this court says that that's ‑‑ that you need a sufficient particularity and clarity, the reasons for the denial of the asylum. The judge misstated the facts in her decision, and I believe that Judge Wardlaw is correct that that may have ‑‑ her negative credibility finding may have definitely influenced that incorrect characterization of the facts. For example, calling it episodic when the police officer told Petitioner the last time that he complained about the Army assaulting him on the road, that Petitioner should stop making these police complaints because he was just making things worse for himself, meaning that every single time Petitioner's house was burglarized, despite a rather impressive security system that he testified to. Well, can we agree with you that we take his story, we look at the record de novo and find that he's established persecution, taking his testimony as true and what he says measures up. I assume you would say that we should order that asylum should be granted. Either asylum should be granted or it should be remanded because there was ‑‑ because I would submit that Judge Yam made up her mind. So if we look at it de novo and find all these things are true and that it measures up to persecution, we should grant the relief. Correct. Suppose the opposite. Suppose we look at it de novo and look at everything he says and we decide that it doesn't add up to persecution. Then you should remand. Heads I win, tails you lose. Yeah. It should be remanded, Your Honor, because the ‑‑ because Petitioner's testimony was hamstrung by Judge Yam's credibility determination that I believe she made quite early on in the hearing. Additionally, the very beginning of the individual hearing, she states that she doesn't want to hear about anything that's in the declaration. Of course, he can talk about it if he wants to, but she wants to hear new things and that Petitioner's should really just stick to adding anything else that they haven't put into the declaration. I think that's outside of the scope of what you argued, but you're out of time anyway. Thank you very much to both sides. The case just argued is submitted. Thank you, Your Honor.
judges: Thomas, Silverman, Clifton